**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CHERYL BOLDEN, Individually and on**                    **PLAINTIFF**
**Behalf of All Others Similarly Situated**

**VS.**                  **No. 4:19-cv-802-KGB**

**SHARON CALLAHAN**                          **DEFENDANT**

## DEFENDANT SHARON CALLAHAN'S AMENDED PROPOSED FINDING OF FACTS AND CONCLUSIONS OF LAW

Comes now the Defendant, Sharon Callahan, by and through Russell Wood and the Wood Law Firm, and for her Amended Proposed Findings of Facts and Conclusions of Law, states:

## PROPOSED FINDINGS OF FACT

1.   The Defendant, Sharon Callahan, owns a single salon in Russellville, Arkansas.  She is the sole d/b/a owner. She rents out space in her building for independent contractor cosmetologists to use for their business. The Plaintiff, a licensed cosmetologist, worked as an independent contractor for the Defendant for a period of November of 2017 until April of 2019.

2.   Prior to working for the Defendant, the Plaintiff worked at JC Penney and a chain salon. She was an employee at each and received regular payroll checks with taxes and other deductions taken out.  She received W-2s from both of these employers.  She had to "clock in" on the computer when she arrived at work and "clock out" on the computer for each break, for lunch and when she left at each place.  Both places of employment set her work times. Tips were given to her employer

Page 1 of 13
Cheryl Bolden, et al. v. Sharon Callahan
U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB
Defendant's Proposed Finding of Facts and Conclusions of Law

and they were included on her taxed payroll check.  The Plaintiff has acknowledged she was an employee while working for her previous employers and was aware of that fact.

3.   While working for the Defendant, Plaintiff received 1099s for 2017 and 2018 without issue and filed taxes as an independent contractor.  She received a 1099 in 2019 and filed as an independent contractor. It was only in this tax year that the Plaintiff raised an issue regarding her employment status.

4.   The Plaintiff and all other renters who worked at the Defendant's place of business and paid a fee split, collected their own money, kept all of their own tips, had to pay for all of their own tools and equipment and for the maintenance and repair of those tools.

5.   While the Plaintiff alleges she was engaged in interstate commerce, the evidence shows that she only ordered supplies from State Beauty Supply or possibly from Cosmo Prof on occasion. The evidence showed that most products were either delivered to the salon or purchased in person. There was no evidence that the Plaintiff regularly engaged in ordering products from out of state. In regard to ordering products, the Plaintiff's primary role was to simply assist the Defendant in working a computer when orders were made online.

6.   The evidence established that all products were primarily ordered from sources within the State of Arkansas.  There was no evidence presented by the Plaintiff that orders were made from out of state or involved interstate commerce.

7.   The Plaintiff was charged rent for access to the building and infrastructure to use for conducting cosmetology services.

8.   The Plaintiff paid rent on a per customer basis with a 60/40% split, with the Plaintiff receiving 60% and the Defendant receiving 40%.  The Plaintiff chose this 60/40 split per customer

Page 2 of 13
Cheryl Bolden, et al. v. Sharon Callahan
U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB
Defendant's Proposed Finding of Facts and Conclusions of Law

rather than a set weekly rent because she did not have a book of business built up and could not pay a set weekly rental.

9.    The Plaintiff's 60/40 percent split cost Plaintiff more than a set weekly rent and the extra fee included her purchases from the Defendant of fungible, replaceable products.

10.   The evidence shows that the 40% fee collected by the Defendant was for rent of the infrastructure and to pay for product used by Plaintiff as a cosmetologist. The items provided to the split fee employees by the Defendant were included in the rent and were incidental to performing the core job of a cosmetologist.

11.   While the Defendant suggested the Plaintiff work regular hours, the evidence clearly shows that the Plaintiff could work any hours she wanted, including nights.  The evidence shows that Plaintiff took off, took breaks and lunches whenever she wanted and took off whenever she wanted.

12.   The evidence shows that the Plaintiff set her own schedule, could arrive or leave whenever she wanted, and she had her own appointment calendar in Vagaro, a cloud-based appointment program that the cosmetologists' utilized for booking and communicating with customers.

13.   The Plaintiff supplied all of the customary tools and equipment needed and used by cosmetologists to perform services for their customers, including scissors, shears, electric trimmers, combs, brushes, hair dryers, and any other tools.  The tools and equipment provide by the split fee employees and the Plaintiff were required to perform their primary job as a cosmetologist.  Without the tools supplied by the split fee girls, they could not perform their job.

**Page 3 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

14.   The evidence also shows that the Defendant did not exercise any control over how the Plaintiff performed her cosmetology services, when she performed her cosmetology services, or control her cosmetology schedule. Evidence presented at trial confirmed that on most days the Defendant did not even arrive until 2:00 p.m..

15.   The evidence also shows that the Defendant did not set standard prices for cosmetology services.   The salon had a Hair Menu that outlined the base prices the fee split employees came up with but allowed each to charge higher prices as the job required, if they wanted to.  Plaintiff was able to set her own pricing.

16.   The Plaintiff had opportunity for profit or loss depending on the number of customers that she serviced and actually experienced loss as the Plaintiff indicated she did not make very much money and in fact, requested back pay for the time she spent at the salon equal to minimum wage.

17.    The evidence also supports that the relationship between the Plaintiff and the Defendant was not of a permanent nature and the Plaintiff was free to leave at any time and could work at more than one salon.  The evidence showed that the fee split workers controlled their customer list and were free to take the customer list with them if they left.

18.   The evidence also proves that the Plaintiff is a skilled worker, having completed a state sponsored school requiring 1500 hours and a written exam to receive her cosmetology license.

19.   The Plaintiff failed to provide sufficient evidence to establish that the Defendant was an "employer with four or more employees."

20.   Arkansas licensed cosmetologists are required to comply with the Rules of Regulations of the Arkansas State Board of Cosmetologists, including the cleanliness of the facility and

**Page 4 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

equipment used by cosmetologists.  These requirements are regulated by the State of Arkansas and are subject to fines for failure to comply with these requirements.

21.    The evidence shows that all of the independent contractors that rented the facilities of the Defendant were liable, individually and jointly, pursuant to Rule 6.1(A)(1) of the Arkansas Board of Cosmetology for cleaning the facility and complying with the rules promulgated by the Board in regard to cleanliness.

22.    Arkansas Board of Cosmetology Rule 6.1(A)(1) states: "An establishment owner…shall be liable for implementing and maintaining the Health and Safety Rules in the establishment…." It goes on to state "[t]his shall be done individually and jointly with all persons employed by or working in or on the premises of such establishment…." And finally states "[a]ll practitioners…shall be held individually liable for implementation and maintenance of the Health and Safety Rules as applicable.

23.    The Plaintiff's testimony and handwritten calendar are not credible and the evidence does not support Plaintiff's version of events regarding the amount of cleaning she performed or total hours worked.  Furthermore, the testimony of the Plaintiff was controverted by that of Kristin Beehrle and Trilla Turner.

24.    The testimony of the Defendant, Trilla Turner and Kristen Beehrle established that the Defendant hired a cleaning person that cleaned on Sundays or Mondays while the establishment was closed, contrary to Plaintiff's testimony.  Both Turner and Beerhle testified that the establishment was always very clean when it opened back up on Tuesdays, clearly contradicting Plaintiff's testimony and calendar entries that she cleaned for multiple hours on Tuesdays.

**Page 5 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

25.    Plaintiff did not present a single person to corroborate her testimony and her credibility was impeached with evidence of a prior felony for Aggravated Assault upon a correction facility officer and a conviction for filing a false police report.

26.    The only evidence presented by the Plaintiff was a handwritten calendar.

## PROPOSED CONCLUSIONS OF LAW

### I.    The Defendant is not a covered entity under the FLSA.

1.    The FLSA applies only to employers who are (1) "engaged in commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage) and whose annual sales total $500,000 or more.  29 U.S.C. §§ 206(a), 207(a).

2.    For enterprise coverage to apply, the Plaintiff must show that the Defendant (1) "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made, or business done, not less than $500,000."  29 U.S.C. § 203(s)(1)(A).

3.    There was no evidence presented that the Defendant has annual gross sales of $500,000. The Defendant specifically testified that she had not made $500,000.00 or more in a calendar year, so enterprise coverage does not apply.

4.    The FLSA provides individual "coverage for 'employees who [are] themselves engaged in commerce or in the production of goods for commerce." *Reich v. Stewart*, 121 F.3d 400, 405 (8th Cir. 1997) (quoting *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 517 (1973). For individual coverage, '[t]he burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce.'"

**Page 6 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

*Miller v. Centerfold Entm't Club, Inc.*, No. 6:14-CV-6074, 2017 WL 3425887, at *3 (W.D. Ark. Aug. 9, 2017) (quoting *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012)).

5.  For an employee to be "engaged in commerce" under the FLSA, the employee must directly participate "in the actual movement of persons or things in interstate commerce" by "(i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Ghess v. Kaid*, (E.D. Ark. 2020), citing *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. § 776.23(d)(2); 29 C.F.R. § 776.24); see also 29 C.F.R. § 776.10(b); *Schmidt v. Peoples Tel. Union of Maryville, Mo.*, 138 F.2d 13, 15 (8th Cir. 1943).

6.  "When enacting the FLSA, Congress plainly indicated its intention to leave local businesses to the protection of the state." *Mayo v. Jean Nicole Hair Salons*, 2015 WL 4751202 (M.D. Fla. 2015), citing *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943).

7.  The Plaintiff claimed that she used the internet to order products and ran credit card transactions.  The evidence shows that products were obtained from State Beauty Supply in Russellville, Arkansas and possibly a few orders from Cosmo Prof in Conway, Arkansas. Orders from neither of these suppliers would constitute "interstate commerce."  Additionally, since the Plaintiff did not regularly order supplies from State Beauty Supply and/or Cosmo Prof she did not establish that she was engaged in interstate commerce by ordering products online.

8.  The Plaintiff worked in Russellville, Arkansas at a hair salon.  Her job involved local clients.  The Plaintiff did not produce anything involving interstate commerce, nor did she engage

Page 7 of 13
Cheryl Bolden, et al. v. Sharon Callahan
U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB
Defendant's Proposed Finding of Facts and Conclusions of Law

clients out of state or do any other task on behalf of the Defendant that regularly involved interstate commerce.

9.   As such, individual FLSA does not apply to the Defendant and judgment is entered for the Defendant.

**II.      The Defendant is not a covered entity under the AMWA.**

10.   The AWMA only applies to employers with four or more employees.   The Plaintiff conceded this was an accurate statement of law. The Defendant does not have any employees, so the AMWA cannot apply to her.   The Plaintiff could not establish that the Defendant had four or more employees, and as such, the Plaintiff dismissed all claims under the Arkansas Minimum Wage Act.

**III.     The Plaintiff is an independent contractor under the FLSA.**

11.    At all times, the Defendant acted as an independent contractor. FLSA wage and hour requirements do not apply to true independent contractors. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089 (8th Cir. 2017).

12.    "[D]etermin[ing] whether a worker is an employee or an independent contractor under the [FLSA] is one of economic reality." *Ghess v. Kaid* (E.D. Ark. 2020); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961).

13.    The Supreme Court, in *United States v. Silk*, 331 U.S. 704, 712 (1947) laid out the test to determine whether a worker is an independent contractor. The elements to consider are: 1.) degree

**Page 8 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

of control, 2.) opportunity for profit or loss, 3.) investment in facilities, 4.) permanency of the relationship, and 5.) required skill to be relevant in determining employee status.

### a.  Degree of Control

14.   To determine degree of control, the court looks at the "freedom to work when she wants and for whomever she wants reflects economic independence, or whether the freedoms merely mask the economic reality of dependence." *Carter v. Primary Home Care of Hot Springs, Inc.* (W.D. Ark. 2015); *Reich v. Priba Corp.*, 890 F. Supp. 586, 592 (N.D. Tex. 1995) (citing *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 300-02 (5th Cir. 1975)).

15.   The Defendant did exercise any significant degree of control over Plaintiff.   The Defendant was not there for the majority of the working hours of the Plaintiff.  Plaintiff had the freedom to work when she wanted and Plaintiff had the economic reality of independence.

### b.     Opportunity for Profit or Loss

16.   Plaintiff had an opportunity for profit and/or loss in the matter. Plaintiff was paid 60% of every dollar she charged under the agreement. Plaintiff had the opportunity to make as much profit as her skill and work ethic allowed. Likewise, Plaintiff had the opportunity to realize loss by failing to perform acceptable services or failing to work a sufficient number of hours.  In fact, Plaintiff complains that she didn't make enough money for the amount of hours she invested, demonstrating opportunity for loss.

17.    Plaintiff was not paid a fixed or set rate, nor was she limited in the amount she could earn.  Her pay was entirely dependent upon the number of her clients she saw and the number of services she performed.

Page 9 of 13
Cheryl Bolden, et al. v. Sharon Callahan
U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB
Defendant's Proposed Finding of Facts and Conclusions of Law

18.    As such, this is a classic independent contractor scenario and this factor weighs in favor of the Plaintiff being an independent contractor.

### c.    Worker's Investment in the Business.

19.    In *Roslov v. DirecTV Inc.*, the District Court looked at this factor in regard to a satellite dish installer.  The Court found that "Degraftenreed purchased his own equipment, tools, and supplies, his own fuel and insurance, and used his own cell phone and computer system, for use in completing the DirecTV orders. This is a significant investment, favoring independent contractor status." *Roslov v. DirecTV Inc.*, 218 F.Supp.3d 965 (E.D. Ark. 2016).

20.    As shown in this case, the investment is not meant to be so narrow as to only apply to a building, supplies or fixtures, but instead should be focused on the investment in tools which are required for the business and to complete the worker's job.

21.    First, Plaintiff paid rent for the use of the Defendant's facilities and purchased her necessary fungible products from the Defendant. Second, Plaintiff supplied the scissors, trimmers, shears, combs, straighteners and other tools which were necessary to conduct her business. Without those tools, she would have been unable to do the core function of her business and as such, her investment in her business establishes that Plaintiff was an independent contractor.

22.    Furthermore, there was a significant investment in the training and education required to perform the job as a hairdresser.  This is another way in which the Plaintiff invested in her business.

### d.    The skill and initiative in performing the job.

23.    It is clear that the Plaintiff has specialized skills in order to do her job.  The Plaintiff has plead that she is a licensed cosmetologist.  To be a cosmetologist in Arkansas, you have to

**Page 10 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

complete cosmetology school, have 1500 hours of written and practical experience and you must maintain a current license.

24.   In line with *Roslov*, to be a beautician, "specialized training and skills are required and …someone off the street cannot perform the job." *Roslov v. DirecTV Inc.*, 218 F.Supp.3d 965 (E.D. Ark. 2016); *Scruggs v. Skylink, Ltd.*, 2011 WL 6026152, at *7 (S.D. W.V. Dec. 2, 2011).

25.   As such, this element weighs in favor of the Plaintiff being an independent contractor.

### e.  Permanency of the relationship.

26.   The more permanent the [working] relationship, the more likely it is that a court will find a worker to be an employee." *Carter v. Primary Home Care of Hot Springs, Inc.* (W.D. Ark. 2015); *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 150 (D.D.C. 2011).

27.   The Plaintiff only rented space from the Defendant for 18 months and then the relationship ended. In that time, she rarely worked 40 hours a week and there was no contract or agreement for employment.

28.   Testimony at trial established that this was a transient business and it was common for hairdressers to frequently move from place to place in this line of work. The Plaintiff produced no evidence to contradict this testimony.

29.   The Plaintiff possesses "specialized and widely-demanded skills," which means that she has true economic independence and can take those skills anywhere she wants and whenever she wants.

30.   As such, this element weighs in favor of the Plaintiff being an independent contractor.

### f.    The extent to which the work is an integral part of the alleged employer's business.

**Page 11 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

31.   Defendant is a licensed cosmetologist and Hair Tech Studios will continue as usual without the services of the Plaintiff or any other independent contractor. The Plaintiff's work is irrelevant to Defendant's continued business.

32.   The Defendant can carry out the integral functions of the business on her own as she is a licensed cosmetologist.

33.   As such this element weighs in favor of being an independent contractor.

**IV.     The Plaintiff is an independent contractor under the AMWA.**

34.     "The FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Cummings v. Bost, Inc.,* 218 F. Supp. 3d 978 (W.D. Ark. 2016), citing *Carter v. Primary Home Care of Hot Springs, Inc.*, 2015 WL 11120563, at *2 (W.D. Ark. 2015).

35.     As such the same analysis applies and the Plaintiff is an independent contractor under state law as well.

36.     However, this analysis is irrelevant, as the Plaintiff admitted that the Defendant did not meet the minimum requirements under the AMWA and therefore, it did not apply.

Respectfully submitted,

Russell A. Wood
AR2001137; TN23102
**WOOD LAW FIRM, P.A.**
501 East 4th Street, Suite #4
Russellville, Arkansas 72801
Telephone: (479) 967-9663
Facsimile: (479) 967-9664
woodlaw@suddenlinkmail.com

**Page 12 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served via ECF on July 9, 2021, to the attorneys listed below:

Lydia H. Hamlet
Ark. Bar No. 2011082
lydia@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com


                                        Russell A. Wood

**Page 13 of 13**
**Cheryl Bolden, et al. v. Sharon Callahan**
**U.S.D.C. (E.D. Ark.) No. 4:19-cv-802-KGB**
**Defendant's Proposed Finding of Facts and Conclusions of Law**